UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROBIN DEPUTY,  )
    *Plaintiff*,  )
  )
*vs.*  )    1:13-cv-412-JMS-DKL
  )
CITY OF SEYMOUR, *et al.*,  )
    *Defendant.*  )

## ORDER

Presently pending before the Court is Plaintiff Robin Deputy's Motion to Reconsider Order on Summary Judgment. [Filing No. 53.] Ms. Deputy's motion asks for relief from this Court's Final Judgment, [Filing No. 52], issued the day that the Court granted summary judgment in favor of Defendants City of Seymour ("Seymour") and Police Chief William Abbott ("Chief Abbott") (collectively, "Defendants") on all of Ms. Deputy's claims, [Filing No. 51]. For the following reasons, the Court grants Ms. Deputy's pending motion to the extent that the Court addresses the arguments she raises, but denies the relief she requests. [Filing No. 53.]

### I.
### STANDARD OF REVIEW[1]

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." A Rule 59(e) motion "is not a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013). Instead,

---

[1] Although Ms. Deputy titles her motion a "Motion to Reconsider," [Filing No. 53], she cites the applicable standard for Federal Rule of Civil Procedure 59 and the Court will apply that standard. *See Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174 (1988) ("[A] postjudgment motion will be considered a Rule 59(e) motion where it involves reconsideration of matters properly encompassed in a decision on the merits.").

1

to receive the requested relief, the moving party "must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Id.*

## II.
### BACKGROUND

In its summary judgment order, the Court detailed at length the events preceding Ms. Deputy's lawsuit against Defendants. [Filing No. 51 at 3-8.] With one exception addressed in the discussion, Ms. Deputy does not challenge the Court's summary. [Filing No. 53; Filing No. 54.] Below is a condensed version of the background set forth in the summary judgment order to provide context for the Court's rulings on the arguments Ms. Deputy presents in her motion.

Ms. Deputy worked as a dispatcher for the City of Seymour from March 2010 to August 2012. [Filing No. 36-1 at 4; Filing No. 36-3 at 4.] Dispatchers are members of the communications section and are responsible for all incoming emergency 911 calls within Seymour and for dispatching police and fire services. [Filing No. 36-1 at 1.] Two dispatchers are typically on duty at one time—one dispatcher handles incoming 911 emergency calls and the other dispatches for the police officers concerning traffic stops. [Filing No. 36-3 at 5.]

Dispatchers are offered two distinct opportunities for overtime hours. [Filing No. 36-3 at 5-6; Filing No. 43-2 at 41.] Through voluntary overtime, dispatchers can sign up to cover shifts for scheduled absences. [Filing No. 36-3 at 5-6.] In the event of unforeseen absences, dispatchers on the overtime call-out list are asked to take overtime to cover a vacant shift. [Filing No. 43-2 at 41; Filing No. 36-1 at 2.] All available dispatchers are on the call-out list, and the dispatcher currently on duty will call the other dispatchers in the order they are listed. [Filing No. 36-1 at 2.] If a dispatcher agrees to fill the vacancy, his or her name is moved to the bottom of the list. [Filing No. 36-1 at 2.] If no one accepts the overtime, then the dispatcher on duty has to call the other

dispatchers again in the order they are listed. [Filing No. 36-3 at 6.] Someone usually accepts the overtime, [Filing No. 36-3 at 12], but on those rare occasions that no one does, it is permissible for a dispatcher to work alone, [Filing No. 36-3 at 13], or for a police officer to help cover the shift, [Filing No. 43-2 at 42-43].

On Saturday, August 25, 2012, Ms. Deputy had the day off. [Filing No. 36-3 at 6.] She consumed multiple alcoholic beverages throughout the day. [*See* Filing No. 51 at 4 (citing designated evidence).] Around 8:20 p.m., a dispatcher who was scheduled to work the 11:00 p.m. to 7:00 a.m. shift called in sick. [Filing No. 36-1 at 3.] Calls were made to the nine dispatchers on the overtime call-out list, but there were no volunteers. [Filing No. 36-1 at 3; Filing No. 43-2 at 41.] Ms. Deputy's name was on the top of the overtime call-out list. [Filing No. 43-2 at 4.]

Sergeant Mike Cooper called Chief Abbott to inform him that no one had accepted the overtime, and Chief Abbott had Sergeant Cooper send an officer to Ms. Deputy's house to make contact with her. [Filing No. 43-2 at 4.] When Ms. Deputy returned home, Jennings County Sheriff's Deputy Officer Jones was in her driveway with his squad car lights flashing. [Filing No. 36-3 at 8.] Officer Jones told Ms. Deputy that the Seymour Police Department had requested that she call work. [Filing No. 36-3 at 8-9.] Officer Jones left Ms. Deputy's residence after she told him that she would make the call. [Filing No. 36-3 at 8-9.] Ms. Deputy spoke with Sergeant Cooper, who she admits ordered her to come to work. [Filing No. 36-3 at 9 ("Q He ordered you to come in to work? A Yes.").] Ms. Deputy responded, "Okay, well, I've been drinking." [Filing No. 36-3 at 9.] Sergeant Cooper replied that he would tell Chief Abbott. [Filing No. 36-3 at 9.]

Sergeant Cooper called Chief Abbott and told him that Ms. Deputy did not sound like she was under the influence of alcohol but that she was not coming in because she said she had been drinking. [Filing No. 36-1 at 3; Filing No. 43-2 at 5-6.] Chief Abbott told Sergeant Cooper to

3

send the Jennings County Sheriff's Deputy, Officer Jones, back to Ms. Deputy's residence to offer her a portable breath test ("PBT") in order to determine her level of intoxication. [Filing No. 36-1 at 3.] No policy prevented Ms. Deputy from drinking while off duty or refusing overtime. [Filing No. 43-2 at 35-36.]

Officer Jones returned to Ms. Deputy's residence approximately ten to fifteen minutes later, and she walked out to the sidewalk to meet him with a wine cooler in hand. [Filing No. 36-3 at 9-10.] Officer Jones told Ms. Deputy that Chief Abbott had ordered her to take a PBT. [Filing No. 36-3 at 9.] Ms. Deputy refused to take the PBT. [Filing No. 36-3 at 9-10.] Officer Jones told her that he would tell his dispatch and that it would notify the Seymour Police Department. [Filing No. 36-3 at 10.] Ms. Deputy had no further communication with the Seymour Police Department that evening. [Filing No. 36-3 at 10.]

The next two days, Ms. Deputy worked her regular shifts from 11:00 p.m. to 7:00 a.m. [Filing No. 36-3 at 10.] When her shift ended at 7:00 a.m. on August 28, 2012, Chief Abbott asked to speak with Ms. Deputy and ultimately fired her. [Filing No. 36-3 at 10; Filing No. 43-5.] The parties dispute why Ms. Deputy was fired, but the Court noted in its summary judgment order that construing the evidence in favor of Ms. Deputy, as it is required to do on summary judgment, "the Court's decision assumes that Chief Abbott fired Ms. Deputy for refusing his order that she take a PBT." [Filing No. 51 at 17.]

Ms. Deputy filed a Complaint against Seymour and Chief Abbott on March 12, 2013, alleging that her termination was "in retaliation for her lawful refusal to consent to an unlawful search and seizure." [Filing No. 1 at 1.] She asserted claims against the Defendants pursuant to 42 U.S.C. § 1983 and applicable state law. [Filing No. 1 at 5-7.] The Defendants moved for summary judgment "on all claims raised in plaintiff's complaint." [Filing No. 38 at 1; *see also*

4

Filing No. 35 at 1 ("The defendants now move for summary judgment on all claims.").] In her response, Ms. Deputy conceded that her state law claims against Seymour could not succeed. [Filing No. 42 at 2.]

On July 21, 2014, the Court issued its Order granting summary judgment in favor of Defendants on all of Ms. Deputy's claims. [Filing No. 51.] In doing so, the Court noted that Ms. Deputy's response framed her § 1983 claim "as two types of alleged constitutional violations—1) a Fourth Amendment claim for Chief Abbott allegedly violating her right to be free from unreasonable searches and seizures by ordering her to submit to a PBT, and 2) a retaliation claim based on her subsequent termination, which she contends was the result of her exercising her Fourth Amendment rights." [Filing No. 51 at 12.] The Court further noted in a footnote that "[a]lthough Ms. Deputy's Complaint asserts her § 1983 claim against both 'Defendants' . . . [i]n response to Defendants' Motion for Summary Judgment on all of Ms. Deputy's claims, Ms. Deputy does not respond that she is asserting a claim of this nature against Seymour. If Ms. Deputy intended to assert such a claim, the Court finds it to be waived." [Filing No. 51 at 8 (citing cases addressing § 1983 claims against municipalities brought pursuant to *Monell v. Department of Social Serv.*, 436 U.S. 658, 690 (1978)).]

On August 18, 2014, Ms. Deputy filed a Motion for Reconsideration, asking the Court to vacate its entry of final judgment. [Filing No. 53.] Defendants oppose Ms. Deputy's request, [Filing No. 55], and the motion is now ripe for the Court's ruling.

### III.
#### DISCUSSION

Ms. Deputy contends that the Court erred in two ways in granting summary judgment to Defendants. First, Ms. Deputy argues that the Court erred by finding a *Monell* claim against Seymour to be waived, arguing that she had no obligation to point out that she was pursuing

5

municipal liability against Seymour because Defendants did not move for summary judgment on that basis. [Filing No. 54 at 2-6.] Second, Ms. Deputy contends that the Court improperly drew an inference in favor of Chief Abbott—the movant—when the Court found it to be undisputed that the order for Ms. Deputy to appear for work had never been rescinded. [Filing No. 54 at 6-8.] The Court will address each issue in turn.

### A. Waiver of Municipal Liability Claim

Ms. Deputy argues that the Court erred by concluding that she had waived a municipal liability claim against Seymour, typically referred to as a *Monell* claim. [Filing No. 54 at 2-6.] She contends that because Defendants did not move for summary judgment on that basis, she had no obligation to respond and point out that she was pursuing a municipal liability claim against Seymour. [Filing No. 54 at 3.]

In response, the City contends that regardless of the merits of the plaintiff's argument concerning the Court's waiver finding, reconsideration would not affect the result because the Court found that Ms. Deputy's Fourth Amendment claim failed as a matter of law. [Filing No. 55 at 1.] Seymour argues that based on that finding, judgment in favor of Seymour on a *Monell* claim was appropriate.

In reply, Ms. Deputy challenges Seymour's substantive argument and points out that it "did not argue that it was constitutional for it to retaliate against Ms. Deputy for refusing to submit to the search." [Filing No. 56 at 1.]

"A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Robyns v. Reliance Std. Life Ins. Co.*, 130 F.3d 1231, 1237 (7th Cir. 1997); *Andree v. Siemens Energy & Automation, Inc.*, 90 F. App'x 145, 152 (7th Cir. 2003) (same). When a party fails to delineate a claim in his brief in

opposition to summary judgment, that claim is "deemed abandoned." *Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) ("because Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned").

Defendants unquestionably moved for summary judgment "on all claims raised in plaintiff's complaint." [Filing No. 38 at 1; *see also* Filing No. 35 at 1 ("The defendants now move for summary judgment on all claims.").] In her summary judgment response brief, Ms. Deputy conceded that her state law claims against Seymour could not succeed, [Filing No. 42 at 2], and she responded to the merits of Defendants' arguments regarding Chief Abbott's liability pursuant to § 1983, [Filing No. 42]. Ms. Deputy never pointed out that she was pursuing a *Monell* claim against Seymour and that Defendants had not moved for summary judgment on that claim. She does not dispute that in her Rule 59 motion, instead claiming that she had "no obligation to anticipate and respond to summary judgment arguments not raised." [Filing No. 54 at 3.] She cites *Williams v. City of Chicago*, 733 F.3d 749, 755 (7th Cir. 2013), to support her argument, but *Williams* admonishes district courts not to explore the designated evidence beyond what the parties cite in "treatment of [a] factual issue," given that "the risk of error is increased" when summary judgment is granted on an issue not argued by the moving party without giving notice to the non-moving party. In Ms. Deputy's case, the Court did not grant summary judgment in favor of Seymour on the municipal liability claim. Instead, because Ms. Deputy did not point out in her response that she intended to pursue a claim of that nature, the Court deemed it abandoned. This is consistent with binding Seventh Circuit precedent that Ms. Deputy does not address. *See Palmer*, 327 F.3d at 597 ("because Palmer failed to delineate his negligence claim in his district

7

court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned").

The Court is not clairvoyant. Unless it is told, it does not know what discovery has occurred between the parties, what legal claims or defenses the parties intend to pursue, or whether contention interrogatories were exchanged for the parties to confirm those claims and defenses.[2] Accordingly, when Defendants moved for summary judgment "on all claims raised in plaintiff's complaint," [Filing No. 38 at 1], and Ms. Deputy failed to point out in response that Defendants had missed one, the Court had no way of knowing that Ms. Deputy apparently intended to pursue that claim past summary judgment. It was her duty to notify the Court of any reason, legal or factual, why her case should survive summary judgment. *Robyns*, 130 F.3d at 1237. She failed to do so. Accepting the position for which Ms. Deputy now advocates would authorize a form of legal "gotcha" that the law frowns upon. *See LM Ins. Corp. v. ACEO, Inc.*, 2010 WL 1655206 (N.D. Ill. 2010) ("But the law frowns on playing 'gotcha' and relying on a blunder to gain an opportunistic advantage.") (collecting Seventh Circuit cases).

To prevent problems of this nature, this District's Uniform Case Management Plan for civil cases was revised, effective December 10, 2013, to include Section II.D, which provides as follows:

> Within 14 days after the non-expert discovery deadline, and consistent with the certification provisions of Fed. R. Civ. Proc. 11(b) the party with the burden of proof shall file a statement of the claims or defenses it intends to prove at trial, stating specifically the legal theories upon which the claims or defenses are based.

---

[2] Ms. Deputy's Complaint did not specifically set forth a *Monell* claim against Seymour. Instead, she generally stated that "Defendants' actions" were actionable pursuant to 42 U.S.C. § 1983. [Filing No. 1 at 5.] The Court reminds the parties that contention interrogatories can be a useful tool to "minimize uncertainty concerning the scope of [a plaintiff's] claims." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996); Fed. R. Civ. Pro. 33(a)(2).

8

*See* Southern District of Indiana website, http://www.insd.uscourts.gov/case-management-plans. Requiring the plaintiff to assess the validity of its claims and list what it intends to pursue after non-expert discovery closes protects both parties. First, it saves the defendant the time and money it would spend moving for summary judgment on claims the plaintiff recognizes after discovery are not meritorious. Second, it ensures that a defendant is aware of all outstanding claims when it moves for summary judgment and protects a plaintiff from inadvertently abandoning a claim by not delineating it in response to summary judgment. *See, e.g.*, *Bergman v. State of Indiana Dept. of Corrections*, Cause No. 1:13-cv-1673-JMS-TAB (Plaintiff's post-discovery Statement of Claims, [Filing No. 24], and Stipulation of Dismissal regarding claims no longer being pursued, [Filing No. 23]).

Although Ms. Deputy was not required to file a statement of claims because the parties were operating under a prior version of this District's Uniform Case Management Plan, [Filing No. 21], binding Seventh Circuit precedent at the time she filed her response to Defendants' summary judgment motion required her to point out her *Monell* claim if she intended to continue pursuing it. *See, e.g.*, *Palmer*, 327 F.3d at 597 ("because Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned"). She did not do this. Accordingly, the Court concludes

that it did not err when it deemed Ms. Deputy's municipal liability claim against Seymour to be waived.[3]

### B. Order to Come to Work

Ms. Deputy contends that the Court drew an improper factual inference in favor of Chief Abbott, the movant, contrary to the well-established standards for summary judgment. [Filing No. 54 at 6-8.] Specifically, Ms. Deputy argues that the Court made an inference in favor of Chief Abbott that his order for Ms. Deputy to appear for work had never been rescinded. [Filing No. 54 at 6-10.] She claims that this inference is improper because the order "while not technically rescinded, was effectively rescinded based upon the City Police Department's longstanding practice that employees who were contacted to work overtime but who had been drinking were not expected to report to work, would face sanctions if they reported to work, and would face no sanctions for not coming to work." [Filing No. 54 at 7.]

In response, Defendants point out that they argued in their opening brief that Chief Abbott's order that Ms. Deputy report to work was not rescinded, based on Ms. Deputy's testimony confirming that fact. [Filing No. 55 at 2.] Defendants contend that Ms. Deputy did not contest

---

[3] The Court rejects Defendants' argument that a *Monell* claim against Seymour would necessarily fail as a matter of law because the Court found that Ms. Deputy's underlying claims failed as a matter of law. [Filing No. 55 at 1.] This is true with respect to Ms. Deputy's Fourth Amendment claim. [Filing No. 51 at 12-15 (concluding that claim failed as a matter of law because Ms. Deputy focused entirely on employment consequences she contended she suffered, in contravention of binding precedent that possibility of employment action cannot enter analysis).] On the retaliation claim, however, the Court did not decide whether there had been a constitutional violation; instead, it granted Chief Abbott summary judgment on the basis of qualified immunity. [Filing No. 51 at 15-18.] "[A] municipality does not enjoy qualified immunity from a damage claim under 42 U.S.C. § 1983." *Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998) (opining that "[w]e do not know how much more emphatically we can state this rule"). This is not to say that Ms. Deputy would have been successful on a *Monell* claim against Seymour, but the merits of that claim are beyond the scope of review in the context of the pending post-judgment motion.

this issue in her response brief; thus, it is too late for it to raise new arguments about it in a Rule 59 motion. [Filing No. 55 at 2-3.]

In reply, Ms. Deputy reasserts her argument that "while not verbally rescinded," a reasonable juror could conclude that Chief Abbott's order "was of no force or effect" based upon evidence that before Ms. Deputy, an employee who reported that she had been drinking alcohol in response to an overtime request would face no sanctions for not reporting to work. [Filing No. 56 at 2-3.]

In the background section of its Order granting summary judgment in favor of Defendants, the Court noted as undisputed that Chief Abbott's "order to report to work was not rescinded." [Filing No. 51 at 6.] In support of that conclusion, the Court cited an affidavit from Chief Abbott and deposition testimony from Ms. Deputy, agreeing that after she told Sergeant Cooper that she'd been drinking "he didn't say you don't have to come in to work." [Filing No. 51 at 6 (citing Filing No. 36-1 at 3 (Chief Abbott affidavit); Filing No. 36-3 at 10 (Ms. Deputy testimony agreeing that after she told Sergeant Cooper that she'd been drinking "he didn't say you don't have to come in to work")).]

Ms. Deputy's arguments on this issue fail for multiple reasons. First, the Court rejects her position that the Court made an improper inference in the Defendants' favor at all. In fact, the Court made no inference on whether the order to report to work was rescinded—it relied on Ms. Deputy's own admission under oath that after she told Sergeant Cooper she had been drinking, he "didn't say you don't have to come in to work." [Filing No. 51 at 6 (citing Filing No. 36-3 at 10).] Ms. Deputy tries to get around this admission by listing six facts that she alleges could be strung together by a reasonable jury to conclude that although the order was "not verbally rescinded, [it] was of no force or effect." [Filing No. 56 at 2-3.] This argument concedes that the order was not

rescinded, which is what the Court noted was undisputed. Ms. Deputy's attempt to ignore her own deposition testimony to attempt to create the purported inference is unavailing.

Second, making all reasonable inferences in favor of Ms. Deputy as it was required to do on summary judgment, the Court noted that its "decision assumes that Chief Abbott fired Ms. Deputy for refusing his order that she take a PBT." [Filing No. 51 at 17.] In other words, whether the order for Ms. Deputy to report to work remained in effect was irrelevant to the Court's analysis because the Court accepted Ms. Deputy's position (that she was fired for refusing the PBT) over Defendants' position (that she was fired for refusing to report to work), as it was required to do on summary judgment.

Third, and perhaps most importantly, the reasons that the Court granted summary judgment to the Defendants did not involve the order that Ms. Deputy report to work. The Court granted summary judgment in favor of Defendants on Ms. Deputy's Fourth Amendment claim because she focused that claim on the employment consequences she alleged she suffered, but the Seventh Circuit Court of Appeals has held that the "possibility or even probability of a future adverse employment action" cannot enter the Court's analysis. [Filing No. 51 at 13-14 (citing, for example, *Driebel v. City of Milwaukee*, 298 F.3d 622, 642 (7th Cir. 2002)).] In other words, whether the order for Ms. Deputy to come to work was rescinded did not play a role in the Court's analysis of the Fourth Amendment claim—analysis that Ms. Deputy does not challenge in her Rule 59 motion.

As for Ms. Deputy's retaliation claim that she was unlawfully fired for exercising her Fourth Amendment rights, the Court granted summary judgment in favor of Chief Abbott on that claim on the basis of qualified immunity. In doing so, the Court concluded that Chief Abbott was entitled to qualified immunity because "none of the cases Ms. Deputy cites are in the context of retaliation in response to a plaintiff's exercise of Fourth Amendment rights." [Filing No. 51 at

16.] The Court cited Seventh Circuit precedent and a recent United States Supreme Court case confirming that unless applicable precedent provides "clear notice" to the defendant regarding the particularized right at issue, the defendant is entitled to qualified immunity. [Filing No. 51 at 18 (citing *Lane v. Franks*, --- U.S. ---, 134 S.Ct. 2369, 2382-83 (2014)).] In other words, whether the order for Ms. Deputy to come to work was rescinded did not play a role in the Court's analysis of the retaliation claim—analysis that Ms. Deputy does not challenge in her Rule 59 motion.

For these reasons, the Court rejects Ms. Deputy's argument that the Court made an improper factual inference in favor of Chief Abbott regarding whether the order to come to work was rescinded. Ms. Deputy admitted in her deposition that it was not and, regardless of that admission, assuming the order was rescinded would not change the outcome of the Court's order.

## IV.
### CONCLUSION

For the reasons explained herein, the Court **GRANTS** Ms. Deputy's Motion for Reconsideration to the extent that it issues this Order addressing her arguments, but it **DENIES** the relief Ms. Deputy requests in her motion. [Filing No. 53.]

September 30, 2014

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution to counsel of record via CM/ECF:**

Rodney E. Farrow
FARROW & THOMPSON
farrow@farrowthompson.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com